and I think that the court is sitting since our former Chief Judge Michael Boudin passed away and so I just wanted to say a word in recognition of his service to the court and to the country. He was a revered and respected judge and and we miss him dearly. Okay you may begin. Thank you Judge. Today's cases will be called as previously announced times will be as allotted to counsel. The first At this time would counsel for the appellant please come to the podium and introduce himself on the record to begin. Chief Judge Barron and may it please the court, Emmett Robinson on behalf of Appellant Steven Pilsen. I'd like to reserve three minutes of my time for rebuttal. You may. This court should reverse Mr. Pilsen's conviction for interstate kidnapping because the government failed to introduce evidence sufficient to prove beyond a reasonable doubt that Mr. Pilsen transported Ms. Stefanoff across state lines during rather than prior to the alleged kidnapping. In other words the government failed to show that Ms. Stefanoff was a hostage when she and Mr. Pilsen crossed from New Hampshire into Maine. The court should also reverse Mr. Pilsen's conviction for interstate violation of a protection order. That is because the no contact condition found in Mr. Pilsen's state court probation documents did not satisfy the statutory definition of a protection order. Section 2266 requires that to be a protection order a no contact condition like this one must be issued in response to a request made quote by or on behalf of a person seeking protection end quote. But here the state prosecutor's motion requesting the no contact condition was made contrary to Ms. Stefanoff's express contemporaneous wishes. So pursuant to the plain text of the statute as well as pursuant to this court's precedent in Dion the no contact condition was not a protection order. Finally if for some reason this court were to conclude that it should not reverse Mr. Pilsen's convictions still it should remain for sentencing because the district court clearly erred when it applied a two level obstruction enhancement to Mr. Pilsen because of mistaken conclusion that he had urged Ms. Stefanoff to lie or to recant. So if I may I would like to start with the kidnapping count. Both the government as well as Mr. Pilsen and the district court agree that here interstate transportation was in fact an essential element of the offense. To quote the government's own quotation of this court's precedent in low in its brief it said to convict Mr. Pilsen the government needed to show the defendant knowingly and willfully seized, abducted, transported her in interstate commerce and held her for ransom reward or otherwise. At the point that he started drinking and speeding would that be enough evidence to infer that she was then held against her will? It would not be your honor regarding the speeding I think it would be very hard-pressed to to submit that that simply speeding is evidence that an individual is held against their will. It would be challenging to jump out of the car if you wanted to escape as we later saw right? That's correct if you wanted to escape but that presupposes that you wanted to escape. It's also the case regarding the drinking that there is a record on the speeding 110 miles an hour. What would be the argument that someone would voluntarily subject themselves to that? I personally wouldn't subject myself to that but I can vouch for teenage drivers in my own family that many people are happy to subject themselves to that sort of speed. The the other issue regarding the drinking is that the evidence shows at 381 of the Joint Appendix and 246. Can I just on this point I take it the government's theory in the indictment or or I don't know if this is clear suppose all that had happened in the case was that there was a period of speeding at 110 miles an hour. Would the indictment have covered that as a kidnapping? It would not have your honor. So what according to the indictment when did the kidnapping occur? The indictment does not specify a time window in that respect. Was there an argument to the jury as to when the kidnapping occurred? Yes the government not directly to the jury I mean that the the the gist of the government's argument was that the kidnapping occurred on the roadside in Maine. Now I can tell you that when Mr. Pilsen's trial counsel moved for the judgment of acquittal the government defended at page 372 of the Joint Appendix on the grounds that the evidence showed that she was being held against her will quote at the time she was fleeing from the vehicle. And prior to that is there any argument as to her being held against her will by the government? There was not. What was the jury instruction as to the interstate commerce component? The jury instruction was that that just the general instruction that the government had to prove that she was transported in interstate commerce. But you're saying that there was no specific argument to the jury as to when the if we had to accept your statement that it was voluntary and it became involuntary there was no specific argument on that point? That's right your honor my friend on the other side can correct me if I'm wrong but I've come the record pretty thoroughly and I don't believe the government grasped the issue fully at at at the trial court level because they made that statement. But putting aside the interstate commerce element I guess what I'm asking is the government had to prove a kidnapping occurred? That's correct. And what is the elements of a kidnapping? Sure. Being held confined without against your will is that the right? There's a litany of verbs in the statute basically being held against your will when you're being transported in interstate commerce. Putting aside the when sure and interstate commerce just the held against your will. Sure. The passage you just quoted is from the argument the government made. Clearly the government presented to the jury the notion that at the moment she was trying to escape from the car she was held against her will prior to that time. Agreed your honor. Then the question is how much prior to that time? Absolutely that is the question and I would submit to the evidence. Was there any contention by the government as to when prior to that time? I'm sorry I misread. Was there any argument by the government as to when prior to that time she was held against her will? There wasn't there was not. No. And just with respect to the satisfaction of the interstate commerce element as you understand it the government's contention is that obviously when she leaves the car in Maine she's not crossing an interstate line at that moment. Correct. So the government's theory couldn't have been that's the relevant moment. So they must be proceeding on the theory that there's a time before that when she was being held against her will. There was physical violence or evidence of physical violence occurred during the transport. At the very end of the transport yes. And I understanding is the government is this your understanding the government's position is that at that moment I take it you wouldn't disagree that the moment there was physical violence if there was out if if it was sufficient that the person would be deemed being held against their will at the moment they were being subjected to it. Certainly. Okay and then your contention though is if that's the key moment that doesn't occur we don't know prior to them being in Maine. We in fact that we we can infer from the record that it occurred only moments before the couple pulled over in Maine. So I'm am I right that your theory of the case is that until there was that physical violence there's no basis for finding the kidnapping element satisfied. Essentially I wouldn't submit that physical violence is essential. I'm not saying that you are saying that in this case that's how you're proceeding on the understanding that that's the moment at which the kidnapping elements. That's correct. And you're contending prior to that moment there's nothing that satisfies the case. There's nothing in the evidence that shows she was threatened outside of Maine that there was any other indication any other evidence showing that she was being held against her will outside of Maine. And there was no direct argument to the jury that any of those prior moments would count. That is correct. There there is argument on appeal of course in the appellate briefs but in the trial court there was no argument on that issue. So it sounds to me like under your version of the kidnapping statute the kidnapping has to have been completed prior to crossing interstate lines and then they're transported after. If any one of those elements of kidnapping is not satisfied until after crossing the interstate line then it's not a federal crime. That's not quite our position judge. So our position is that the the kidnapping and the transportation have to coincide. The transportation has to be part of the kidnapping. It can't precede the kidnapping. So if she was being but just to be precise it it does have to be completed in the sense that although it's a continuing crime so it coincides while it's continuing it has to all of it has to have occurred prior to the crossing. Is that right? All of the elements have to be satisfied prior or during the crossing I guess if we want to be technical it'll be during the crossing. There was a testimony about a discussion about a seatbelt where he says to her you don't need your seatbelt because you're gonna die. Can the jury infer that that kind of conversation would likely have occurred when they got in the car as opposed to some other point? A jury could in theory infer that but in the record the seatbelts mentioned twice. Once in passing and I think I know the spot that you're discussing where it's not very clear and another spot where she says in the middle of the ride he told her he she could take her seatbelt off. So I think I don't think that can be inferred here and even if if there were clear evidence which there isn't that the seatbelt comment was made early on I think that's a thin reed on which to hang the whole proposition that the jury could find beyond a reasonable doubt that she would be held being held against her will at that time. If there are no other questions on the kidnapping count I will move on to the interstate violation of the protection order. So the trial court instructed as I know this court is aware that as a matter of law the no contact condition in this case violated the interstate violation of a protection order statute. Let me restate that so the trial court instructed jury as a matter of law that the protection order that no contact order was a matter of law a protection order but we know this isn't true because the statute says that the request must be made by or on behalf of the person seeking protection. Now the here the request was made by the It's not on behalf of her at that time because at that time she said that she did not want the protection order to be put in place. But that doesn't mean it's not made on behalf of her just because she did not want it. I mean doesn't the state have an interest in making sure in spite of maybe what her personal desires were that she didn't suffer further harm? The state does have that interest and so the state is perfectly entitled to move for that but that doesn't mean that the state that the federal government can then invoke its power under the Violence Against Women's Act in this sort of situation. Is that because of the seeking protection language? It's it's for both your honor yes on behalf of I understand because it was seeking protection. You don't dispute that if she were seeking protection at the moment the no contact order was requested that it could be understood that the no contact order was then made on behalf of her? Absolutely your honor. So that means the key to your point is that even if this was on her behalf it was not on her behalf while she was seeking protection? Absolutely she made clear and... Okay so what is seeking protection? It's the same durational type of issue we were just talking about. At one point she was seeking protection? Arguably. Right. So is it clear under the statute that when she sought protection that initiated the complaint that then down the line resulted in no contact order? Does she have to have been seeking protection at the time of the no contact order? She does your honor. And how do we know that? So first to back up it's not even clear that she ever sought protection in the first place. The government submits that there was a criminal complaint but if you read the record she says I don't remember if I take it you're not hanging your case on that. That's right. So assuming she was seeking protection when she filed the complaint. Because the the language of the statute says that the order must be entered in response to the motion complaint or petition. So in a normal course of language in response to is the is the direct causative agent. So in other words if there were a civil case and the plaintiff filed a complaint then there was discovery the plaintiff filed a motion for summary judgment and then summary judgment was granted. It would be natural to say that summary judgment was granted in response to the civil complaint. No summary judgment was granted in response to the motion for summary judgment. In the same way in Dion we had the exact same issue. In Dion there was an underlying criminal case and as part of that case there was an oral motion by the prosecutor for no contact condition. And this court did not consider whether whether the indictment or complaint or other initiating document from the criminal case was the on behalf of the person seeking protection. Rather this court rightly focused on the oral motion because that was the causative agent not this attenuated position or attenuated connection to the originating complaint. And so just so I follow that the no con the relevant motion is the motion for the no contact order in your view? That's right. And just and and then the idea is at the time that motion was made it was not on behalf of someone seeking protection since if it was on behalf of her she was not seeking protection at that moment. Certainly yeah we certainly know that's the case. All right thank you. Thank you counsel. At this time would counsel for the appellee please introduce themselves on the record to begin. May it please the court good morning my name is Lindsay Feinberg and I'm appearing here today on behalf of the government. I have to say I feel a bit like the elephant in the room given all the discussion about the government's theory at trial. So let's begin with issue one. The government's theory at trial as set forth in the superseding indictment was in fact that on or about December 15th 2019 in the District of Maine and elsewhere the defendant Stephen Pilsen unlawfully seized, confined, and vagueled I may have mispronounced that, decoyed, kidnapped, abducted, and carried away victim one that would be Miss Stefanoff and held her for ransom reward or otherwise in furtherance of the Commission of the offense. Mr. Pilsen and here's the critical part that gets the questions the court was raising earlier willfully transported victim one again Miss Stefanoff in interstate or foreign commerce across the state boundary from Massachusetts to New Hampshire to Maine all in violation of 18 USC section 1201 a1. So as charged in the superseding indictment the government's theory was in fact that Miss Stefanoff was kidnapped by Mr. Pilsen or a reasonable jury could infer that she was being held against her will in Massachusetts. Of course what makes this a federal... Is it important to you when the kidnapping began? It is not important necessarily where the kidnapping began your honor unless the court takes the theory that a kidnapping cannot begin until as Mr. Pilsen's framed it the kidnapping was not complete until he was in Maine. So if that were the case... You don't disagree that someone can voluntarily get into a car and then things can change do you? No not in the least your honor. Multiple cases from multiple circuits have made clear that someone can get into a car of their own volition and then be held against their will if they relinquish their consent. What do you mean by complete? I'm not following. What is your idea of the kidnapping occurring before it's complete? Perhaps I misspoke Chief Judge Barron. It's my understanding of Mr. Pilsen's theory of the case is that Ms. Stefanoff was not kidnapped prior to being deep within Maine. And your theory is that she was? Correct. Okay when did it begin? It began in Massachusetts. When? Well what I would point you in that respect your honor because there's been a lot of talk about what the government did or didn't show is government's exhibit 305. Now that wasn't included in the government supplemental appendix but it's worth highlighting here particularly in light of a reply brief. So in the reply brief submitted by Mr. Pilsen specifically on footnote one on pages four and five Mr. Pilsen faults the government for relying on an unadmitted trial exhibit. It was referred to as defendants exhibit 44 which was used by trial counsel for Mr. Pilsen in an attempt to impeach Ms. Stefanoff. Basically defense counsel was asking about. You understand we're all hanging on to judge Chief Judge Barron's question which is when? Well I guess if I may so the statement that Ms. Stefanoff gave in the immediate aftermath of the offense and I'm going to read from it that quote I was a passenger while Stephen parked in front of Beverly Beach. Beverly Beach is in Massachusetts. I was talking on the phone with a friend of mine when Stephen started driving my car and said we're going on a ride to Canada. Stephen started drinking from a vodka bottle and said we're going for the ride of your life which is going to end tonight your life and my life. I think as soon as Mr. Pilsen made that statement Judge Thompson a reasonable jury could infer that she had not agreed to go with Mr. Pilsen on the ride of her life to die in Canada. What does she say is the reason she got in the car? Her testimony at trial was that. What does that affidavit say? This affidavit does not say why she got into the car rather she spoke with Trooper Duda and that's set forth and I believe government's exhibits 207 and 208 about her reasoning for getting in the car originally and she also testified at trial that the reason she got into the car is if you recall this was the second time Mr. Pilsen had kidnapped her and she was worried about not having access to her car again because following the first kidnapping Mr. Pilsen took her car and when she was able to escape from the vehicle. So while she got into the car of her own volition. The government's theory is upon this the statement made then and then the starting of the car the kidnapping was complete and then continued. And then continued across state lines and her statement goes on your honor to discuss. And why just so I'm understanding it it seemed to me the government made a big deal at trial about the incident that occurred in Maine when she leaves the car and the physical violence that occurred at that point. Just so I understand it given this theory of the when the crime was completed and then continued what was the significance of the government focusing on all of that? Well it's a continuing offense your honor. So in order to know what happened before sometimes it's instructive for a jury to gather evidence about what happened at the end. So at the end here we have a series of 911 calls. We have the culmination of Ms. Stefanoff's own 911 calls. I see so the theory of you're saying the way the presentation of the evidence went is we showed when it began and then we showed that there was no point at which it stopped and so it continued right up through till she's in Maine. So for that whole period she's being kidnapped. Since the crossing of state lines occurs during that period the crime is. That is in fact the government's theory. Did the government ever make the argument to the jury based on that testimony that you now just made to us? That was introduced into evidence. I understand that but did the government ever in its opening or closing ever refer to that statement in trying to prove the kidnapping? I don't believe that the government specifically referenced Exhibit 305. I was in the courtroom for the closing and I certainly know that it wasn't included. In the opening the closing I thought it was focused on the interactions that occurred near the car when she was leaving and escaping the car in Maine. I would agree with that your honor. Do you have any idea why the government thought that what turns out to be the absolutely key piece of evidence in the whole case wasn't mentioned? Well I think your honor this I whether this is the key piece of evidence. I think it is the key piece isn't it? Then perhaps the government could have better tailored its arguments in opening and closing but this evidence was in fact put before the jury along with the other evidence. So it was certainly reasonable for a rational jury to conclude that she had been held against her will beginning in Massachusetts. He said this about you you know the you're gonna die and she got into the car and you're saying that that was involuntary because she didn't want to lose her car again? Your honor I'm saying she got into the car on her own volition at the beginning of the second kidnapping because she didn't want to lose her car. The statement about her going on her own volition mean that she voluntarily entered the car? In comparison I guess I would draw a compare and contrast your honor in the first kidnapping he was physically striking her to keep her in the car at the outset. This didn't happen in the second kidnapping. This case is about the second one so that's why I'm trying to focus on what happened at the second one. Yeah I think a reasonable juror could conclude that she got into the car even that initial entry at the second kidnapping your honor. Against her will. Under consent. Because of her concern. The statement that you read from us. Yes. Where he says you're gonna go on the ride of your life. That statement was made after she was in the car or before she was in the car? That was made after she was in the car with him. He begins driving and drinking from a vodka bottle. So while he's drinking from a vodka bottle and driving her in her vehicle he makes the statement about going on the ride of your life to Canada. So why did she get in the car? She's already in the car. She's already inside the car. Why did she get in the car? Because she was concerned about Mr. Pilsen taking her car and she thought she could reason with him if she were with him. Okay so she voluntarily entered the car. Yes. And then you're saying it changes to involuntary when she's in the car and he starts he says this comment. He makes this comment. He's drinking and then it goes on to the speeding. So then we know that comment is made while he's in Massachusetts. We know that in context it's made after she gets in the car in Beverly Beach and what I would add your honor is. Wait a second. What's the context? You said we know in context. Well reviewing the totality of the statement it begins with her being in Massachusetts and where the encounter started and then on the back page of the statement it talks about eventually getting into Maine. So when does the according to the statement when does he say this thing that you're saying is the initiation of the kidnap? The only context clues your honor is when she's a passenger parked in front of Beverly Beach. So he makes the statement we're going on the ride of your life which is going to end tonight your life and mine. And that's when he makes that statement you think in context it's fair to read it as he makes that statement when she's parked in front of Beverly Beach. And the reason I would say that your honor is the next two sentences sort of make clear that it's going then into New Hampshire and Massachusetts and into Maine. So I'm just going to read those briefly. So Mr. Pilsen threatens her we're going for the ride of your life which is going to end tonight your life and my life. Stephen looked intoxicated as he was swerving and driving unsafely. But now but now when just see this is what I'm. Clearly the statement was not made when they're parked in front of Beverly Beach. That's true your honor. Okay so the so how do we know that the statement is occurring in Massachusetts. She gets into the car when they're parked in front of Beverly Beach. He gets into the driver's seat. He's then drinking and swerving and he makes this statement. Do we know that statement occurred in Massachusetts? Again your honor. You keep referring to the statement but she testified at trial right? She did. So what did she say at trial? Was she asked when the statement was made? She was not asked at trial when the statement was made. But she asked about the statement? She was cross-examined about the statement both by counsel for Mr. Pilsen and then this actual exhibit was admitted as a prior consistent statement. But the government didn't ask her about it. The government did ask about why she got in the car that day your honor and it's exactly what your honor previously alluded to. She got in the car according to her own testimony because she thought she could reason with him and because she was concerned about not having access to her car. And then she never makes any statement about when that statement was made to her? She does not give a timeline your honor of exactly when these different events transpired in her testimony at trial. So the basis for saying that statement was made while they were in Massachusetts in your view is what? It's a combination of things your honor. I believe it's both the totality of her trial testimony being read in conjunction with her statement in the immediate aftermath of this event. We're just trying to get a hint. What what does she say in that testimony that provides a supportable basis for saying the statement was made in Massachusetts? So this the subsequent statement your honor there are subsequent sentence to be clear and government's exhibit 305 after she's talking about the drinking and the intoxication is that so he's in a trance talking angrily saying people like me to needing to die and speeding up to 110 miles while driving to New Hampshire and then to Maine. So that is the critical part of the statement that I'm trying to get at your honor. So the context being encounter begins at Beverly Beach. This statement is made this threat. He's continuing to act threateningly and erratically towards her driving up to 110 miles per hour into New Hampshire and then into Maine. So from there I think a jury could infer that in fact it began in Massachusetts and concluded in Maine. As to the second issue well I guess unless the court has further questions as the first issue I'd like to address the second issue. Go ahead. As to the second issue the question of whether a stay away no contact order qualified as a protection order under 18 U.S.C. 2262 a1 it's a question of law and it's for the district court and it's not a question for the jury. That was the circumstance that was presented in the Dion case and that's certainly how Chief Judge Levy viewed the matter here. In fact review of the record makes clear that trial counsel for Mr. Pilsen filed a rule 12b6 motion arguing that count two of the superseding indictment was defective as a matter of law. And after the undisputed evidence at trial made clear that in fact Ms. Stefanoff was a person seeking protection. At the time of the request for the no contact order? At the time of the initial kidnapping, the first kidnapping. At the well let's do my question first. At the time of the request for the no contact order was she seeking protection? At the time of the request for the no contact order she said that them being together would be good for her and good for him and she tried to take accountability for her role in the first kidnapping. So she was not affirmatively seeking protection from him at that time. Okay so it must be then your theory is that the motion for the no contact order is not the relevant motion? The motion for the no contact order is the relevant motion insofar as it's being pursued by the state prosecutor on her behalf or for her protection. However what sets everything into motion your honor is the initial encounter where she where law enforcement's called. And the idea is at the time of the complaint she was seeking protection? That's correct your honor. Okay so that just help me understand textually under the statute. If the motion for the no contact order is the thing that is on behalf of her and the complaint is not, because you're not relying on the complaint you're relying on the motion for the no contact order to satisfy the statutory test I thought right? You seem to be saying that the seeking protection doesn't have to be seeking protection at the time of the motion. And I'm just trying to figure out textually why we would read the statute that way. So the relevant clause of the statute that the court interpreted in Dion is so long as any criminal or civil or criminal order was issued in response to a complaint petition or motion filed by or on behalf of a person seeking protection. And the government's view your honor is that there are two relevant periods here. There's what gets us in the door. Here that would be the first kidnapping law enforcement being called and Ms. Stefanoff seeking. But the relevant motion your honor is in fact the oral motion made by the state prosecutor. So what we see in the text is that Ms. Stefanoff is a person seeking protection by virtue of the initial complaint she made. I just don't understand how the text supports that. Just walk me through what it just reading the text. What in the text supports the idea that the thing that is the protection that the request for the protection order is on behalf of was made on behalf of a person seeking protection. That thing has to be something. It's I thought the motion for the no contact order right? It is the motion for the no contact. So once that's the motion for the non-contact order why do we care whether the person was seeking protection at some earlier time before that motion was made? Well I think we care your honor because the person seeking protection clause is what gets us into the auspices of a protection order. In Dion, I see my time's running out. May I complete my answer? In Dion what transpired there is the victim was the victim of an aggravated assault and then the condition was imposed as a pretrial bail condition. There's nothing in the record that or nothing in the court's decision in Dion that indicates whether or not that victim was in the court that day actively seeking protection. There's nothing indicating she wasn't. That's true. Here there is something indicating that the time of the motion she wasn't. That's true. So why isn't that a salient difference for purposes whether that satisfies? It's not a salient difference because of the reach that Congress sought under VAWA your honor and it's not a salient difference because the goal is to take a broad view and I don't think anyone could dispute as a policy matter that someone in Ms. Stefanoff's condition is exactly the sort of victim that Congress was interested in keeping protected. A twice kidnapping victim involved in a domestic violence cycle with Mr. Pilsner. But what what is your argument or how do you argue that seeking protection is so broad to have to include did seek sought protection at some point in the past? Well your honor as anyone who's dealt with domestic violence victim and domestic violence cases knows as a practical matter and I think the Diane court makes this clear victims sometimes decide not to cooperate and they sometimes decide to recant even allegations. Nevertheless, state prosecutors and state courts still oftentimes in their best interest and for their safety go out of their way to make sure that those individuals are protected. That's why that's a fine policy argument. What does that have to do with the term seeking protection? Well your honor I think that the outer reaches here is that the person or the victim needs to be actively seeking protection at some point. I think there's been a suggestion made that perhaps the government's too heavy-handed. Is there a temporal limit? I think so long as an initial criminal or civil complaint is initiated your honor for by a domestic violence victim that otherwise falls within the auspices of a protective order as defined that is the temporal limit. That there has been some initial involvement of the government or law enforcement or the state. So is the second part of that argument that if so long as the motion is filed in connection with that having happened? In conjunction with that having happened? Yes your honor that is the follow-up part. If the court has no further questions I would simply ask that Mr. Pilsen's convictions and sentence be affirmed. Thank you. Thank you. Thank you counsel at this time would counsel for the appellant please reintroduce himself on the record he has a three-minute rebuttal. Thank You Emmett Robinson for Mr. Pilsen. Regarding exhibit 305 this was the first time I've heard anything about this so I feel a little bit sandbagged there but I would point out that the government's reliance on 305 and the theory that the kidnapping started at Beverly Beach in Massachusetts here at this oral argument is the first time that that that evidence and that theory has ever been presented to anyone. It was never presented at trial. She just read a portion of the affidavit that indicated that the threat started as they were heading to New Hampshire so why wouldn't that suffice? That that affidavit counsel represents that it was represent that it was in the record below that could be I have no way of verifying that because it was not relied on in their brief nor was it relied on below by the government at any time. So you don't know if it was admitted into evidence or if it was admitted for a limited purpose? That's right I know that this the only discussion of that document occurred on the pages cited in the government's brief and there it was most assuredly only for impeachment purposes and was being paraphrased by defense counsel and was not part of the government's case-in-chief. Another important issue there again at no time did the government present a theory that that that the the kidnapping started in Beverly. Even if if we were to take this document as the be-all and end-all which I think that's it's very troubling given that this is the first time it's ever been raised. In this case the fact remains that Ms. Stefanoff testified that after they left Beverly Beach they stopped to get a money gram that she got back into the car once again that Mr. Pilsen was still drinking but she wanted to stay with him and that the government says in its brief she the second time voluntarily got back into the car. So even if that happened at Beverly Beach which I think is is highly specious. And that occurred in Massachusetts that she got back into the It's just not clear. We just don't know judge. I wish I knew but but but the second time happened. From your perspective the import of what you're saying is we have no way of knowing that when she got back into the car voluntarily it wasn't in Massachusetts. That's right that's right it could have been in Massachusetts or New Hampshire we don't know but we have a reason to believe it was after this Beverly Beach interaction. In your view it would be so long as we don't know that when she got back into the car it wasn't in Massachusetts then this exhibits irrelevant. That's right that's right. I would also like to point out that could you just you're saying there was the government actually affirmatively argued that she voluntarily got back into the car? The government stated that in its brief to this court and yes in and below it affirmatively argued that. I would like to point out one final I obvious point and that is the government could have simply asked Ms. Stefanoff on the stand when did you become a kidnapping victim? When did you cease to be a voluntary passenger in that car? But the government chose not to do that. You can see I've never I don't believe I've ever seen a witness as unreliable as Ms. Stefanoff. Could I finish my response your honor? Thank you and but so the government chose not to ask this question because they were afraid of what her answer would be. They were afraid that she would say that she got voluntarily into the car twice and it was only at the roadside in Maine where she was being held against her will. Yeah why don't you just I think it would be helpful to the court. We'll just do an order after this regarding that 403 exhibit exactly what its status was in the trial below. We'll just do it that way you can each respond to it. I think that'll be the fairest way to do it. Thank you. Thank you. Thank you counsel that concludes argument in this case.